# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA LOUISE ST. JOHN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:15-cv-01434-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

## I. INTRODUCTION

Plaintiff Tanya St. John ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record and based upon proper legal standards. Accordingly, the Court affirms the Commissioner's determination.

1

## II. BACKGROUND

**A. Overview of Administrative Proceedings**

On July 18, 2007, Plaintiff filed an application for Supplemental Security Income benefits, alleging disability beginning June 1, 1999. AR 33.[1] Two prior administrative decisions were vacated by the Appeals Council on October 21, 2009 and June 10, 2013. AR 143-183. On remand from the Appeals Council, Administrative Law Judge ("ALJ") John Cusker held a hearing. AR 47. In a decision dated February 24, 2014, the ALJ found that Plaintiff was not disabled because, despite some impairment, Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with no public contact. AR 37. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. This appeal followed.

**B. Plaintiff's Background and Recent Hearing Testimony**

The ALJ held a hearing on December 11, 2013, in Fresno, California. AR 55-97. Plaintiff, who was represented by counsel, appeared and testified. *Id.* Impartial Vocational Expert Jose Chaparro also testified at the hearing. AR 53-58.

Plaintiff who was forty years old at the time of the hearing lives in Merced, California. AR 60. She has a high school equivalency (GED) education. Plaintiff lives with her son-in-law, her twenty-two year old daughter, and her nineteen year old son. AR 62-63.

In regards to her alleged disability, Plaintiff testified that she suffers from persistent knee pain and mental impairments including bi-polar disorder and depression. She has worn a cast on her leg for six or seven years and used a walker for five or six years. AR 61-62. She takes morphine, Norco, Vicodin, and acetaminophen as medications. AR 64-65. She testified that pain medications "somewhat" helped, that she felt groggy and got dry mouth as side effects from the pain medications, and she experienced stomach problems as a side effect from her psychotropic medication. AR 67. Plaintiff stated that she had surgery on her knee in 2006 or 2007, and had been

---

[1] References to the Administrative Record cite to "AR," followed by the corresponding page number to the Administrative Record.

2

recently referred to a physical therapist. AR 67-68. At the time of the hearing, Plaintiff had not performed full time work for over twenty-one years. AR 69.

During the hearing, the ALJ noted that the record did not demonstrate consistent treatment for Plaintiff's left knee impairment. AR 70. The ALJ asked Plaintiff's counsel to question Plaintiff about her knee related symptoms. In questioning from her attorney, Plaintiff testified that she currently sees a pain therapist for her knee pain but that further knee surgery was not recommended at this time. AR 71. She currently takes medication for her knee and back pain and she rates her left knee pain at a six on a scale of one to ten. AR 71. She stated that she elevated her leg whenever seated, that she needed to lie down part of the day, and that her daughter helped her bathe, do housework, perform shopping, and made sure she took her medications. AR 72-74, 77, 80.

When asked about her mental impairments, Plaintiff testified that she has been receiving mental health treatment since 2007. AR 75. Despite taking medication, she still hears voices, has trouble sleeping, and she experiences panic attacks, headaches, and nausea. AR 76, 84, 87. Plaintiff cries daily as a result of her depression. AR 79.

Thereafter, the ALJ asked VE Chaparro hypothetical questions based upon the medical record and the ALJ's subsequent RFC finding. AR 89-96. After asking the VE to contemplate an individual of the same age, RFC, education, and work background as Plaintiff, the VE determined that Plaintiff could perform work as it exists in the national economy. AR 91-94.[2]

**C. Medical Record**

The entire medical record was reviewed by the Court. AR 464-991. The Court will reference the medical evidence to the extent it is necessary to the Court's decision.

**D. The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 33-47. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 18, 2007. AR 35. Further, the ALJ identified a history of medial meniscus tear, status post-surgery in April 2008, osteoarthritis of the left knee; degenerative disc disease of the lumbar spine, obesity, bipolar

---

[2] Plaintiff does not challenge the sufficiency of the hypothetical questions posed to the vocational expert.

disorder, posttraumatic stress disorder, and a history of drug abuse, apparently in remission since 2008 as severe impairments. AR 35. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 36.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and five pounds frequently, was able to stand and/or walk off and on up to four hours in an eight hour workday, could squat and walk on grades occasionally, and perform simple, repetitive tasks with no public contact. AR 36-37. The ALJ determined that, based on Plaintiff's age, education, work experience, and RFC, significant jobs exist in the national economy that Plaintiff could perform. AR 46-47. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 47.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

*///*

*///*

4

**DISABILITY STANDARD**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### III. DISCUSSION

Plaintiff challenges the ALJ's evaluation of the medical evidence. Specifically: (1) the ALJ's reliance on an outdated examining opinion; (2) the ALJ's treatment of the treating evidence; and (3) whether the ALJ gave specific and legitimate reasons for rejecting Plaintiff's examining psychiatrist's opinion.

#### A. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Id.* (citing *Winans v. Bowen*, F.2d 643, 647 (9th Cir. 1987)). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate" reasons supported by substantial evidence in the record for doing so. *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a

5

treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999).

### 1. Dr. Martin's Examining Opinion

On October 5, 2007, James Martin, M.D., examined Plaintiff at the request of the agency. AR 464-466. Dr. Martin noted degenerative changes at both knees with crepitus, two small effusions, Plaintiff's gait was oddly antalgic, and heel to toe walking was not attempted. AR 466. Dr. Martin diagnosed Plaintiff with chronic knee pain, other musculoskeletal issues, obesity, and deconditioned state. AR 466. Due to her impairments, Dr. Martin opined that Plaintiff could only lift ten pounds or less at a time and frequently lift up to five pounds and she would likely be able to stand and walk off and on for fours in an eight hour workday with appropriate breaks. AR 466.

In weighing Dr. Martin's opinion, the ALJ found as follows:

> The physical limitations set forth above are consistent with the opinion of James Martin, M.D. who performed an internal medicine consultative examination of the claimant in October 2007. The claimant reported having left knee pain since undergoing surgery at age 21. She also reported pain in her neck with muscle spasms. The claimant used a non-prescribed untraditional wooden cane. She had no trouble getting on or off the exam table. Dr. Martin described her gait as "oddly antalgic." The claimant's cooperation was "unclear" during muscoskeletal testing with grimacing and pain vocalization. The claimant's cervical and lumbar spine had normal range of motion, but the right shoulder had limited range. She had no peripheral edema, clubbing, ulcerations, or skin changes. The doctor noted changes at both knees with crepitus and small effusions. Sensation was intact, and grip strength was 5/5. Dr. Martin diagnosed chronic knee pain and other muscoskeltal issues, and obesity/deconditioned state. He opined that the claimant was able to lift ten pounds occasionally and five pounds frequently, and stand and walk for four hours out of eight. Restrictions involving squatting, walking on grades, and similar

6

> activities seemed appropriate (but were not described in detail). She had the ability to fully manipulate objects. Dr. Martin further opined that the claimant might have difficulty maintaining employment, based on her subjective complaints.
>
> I give great with to this opinion because Dr. Martin's clinical findings support his opinion. However, I note that this this examination preceded knee surgery, and other evidence suggests that surgery should have improved the claimant's condition.
>
> However, I give no weight to Dr. Martin's opinion that the claimant might have difficulty maintaining employment. As noted above other findings and medical opinions cast doubt on the credibility of the claimant's subjective complaints. Indeed, Dr. Martin noted that the claimant's reliability seemed unclear.

AR 38.

### A.  The ALJ Correctly Weighed the Examining Physician Evidence

In her first argument, Plaintiff objects to the ALJ's reliance on the early examining opinion of Dr. Martin. According to Plaintiff, Dr. Martin's opinion pre-dates many of her later diagnosed symptoms. (Doc. 17-1 at 11-16). Plaintiff explains that at the time of her examination by Dr. Martin, her diagnostic imaging was negative. However, subsequent objective testing showed that her condition worsened over the additional seven year period at issue. Plaintiff states that after October 2007, she had knee surgery, and her later imaging revealed positive findings of knee, neck and lumbar spine impairments.

Plaintiff does not challenge the ALJ's evaluation of Dr. Martin's opinion; rather Plaintiff argues that this outdated opinion is not sufficient evidence in which the ALJ can rely. The Court disagrees. Contrary to Plaintiff's assertion, the ALJ properly gave "great weight" to Dr. Martin's opinion but also properly considered additional medical evidence submitted subsequent to Dr. Martin's opinion.

In his analysis, the ALJ summarized accurately the objective findings of Dr. Martin. AR 38. The ALJ acknowledged that Dr. Martin's report occurred early in the Plaintiff's disability process, and specifically, prior to Plaintiff's subsequent knee surgery. AR 38. However, the ALJ noted that Plaintiff's knee surgery, occurring after Dr. Martin's opinion, was likely to improve Plaintiff's condition. AR 38. There is nothing to suggest that the ALJ should have ignored Dr. Martin's opinion simply because Plaintiff continued to receive treatment long after Dr. Martin issued his opinion. The ALJ evaluated Dr. Martin's opinion in addition to the medical records developed

subsequent to Dr. Martin's examination. AR 38-46.

To the extent that Plaintiff argues that the ALJ had a duty to order an additional consultative examination to include a consideration of her more recent medical treatment, nothing in the record indicates that the ALJ had a duty to further develop this evidence. An ALJ has a duty to 'fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Id.* However, an ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("The standard is one of reasonable good judgment"). Indeed, an ALJ is only required to conduct further inquiries with a treating or consulting physician "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010).

The ALJ did not have a duty to develop the record based on the timing of Dr. Martin's 2007 opinion. While Plaintiff alleges that there is a seven year gap between Dr. Martin's opinion and the 2014 opinion of the ALJ, Dr. Martin's evaluation occurred shortly before much of the other medical evidence in the record. Indeed, the ALJ discussed the March 2008 medical findings of Steven Berrian, M.D, occurring merely five months after Dr. Martin's examination. AR 38. Dr. Berrian referred Plaintiff for arthroscopic left knee surgery which occurred on April 11, 2008. AR 38, 781. The ALJ also weighed the opinion of Plaintiff's treating physician Dr. Crews, who completed a medical source statement in October 2008, only a year after Dr. Martin's examination. AR 39. The timing of Dr. Martin's opinion was therefore not far removed from the timing of the other relevant medical evidence.

Further, on the issue of disability there was ample medical evidence in the record to fully and completely assess Plaintiff's medical treatment subsequent to Dr. Martin's evaluation. In determining the ultimate issue of disability, Dr. Martin's 2007 opinion was one of many pieces of evidence relied on by the ALJ. Indeed, the administrative record in this case is comprised of over 500 pages and thoroughly traces Plaintiff's medical history since her first application for benefits.

Contrary to Plaintiff's assertion, the ALJ's decision and analysis reflects that the ALJ's RFC assessment was not exclusively based on Dr. Martin's assessment; the ALJ thoroughly discussed the full medical record and medical evidence relating to the period after Dr. Martin's report. Thus, even though Dr. Martin did not have the opportunity to review evidence that post-dated his examination, the ALJ did not err in considering Dr. Martin's report as part of the record. *Castaneda v. Astrue,* 344 Fed.Appx. 396, 398 (9th Cir. 2009) (unpublished) (even if the consultative examiner did not review certain medical evidence, his assessment rested on his own independent examination of [claimant and was consistent with the record as a whole). And, as explained further below, there were adequate reasons to discredit the other treating evidence, even without considering the ALJ's assessment of Dr. Martin's opinion. Thus, the ALJ did not err in weighing Dr. Martin's examining opinion.

**2. Plaintiff's Treating Physicians – Dr. Crews and Dr. Leong**

In her second issue, Plaintiff argues that the ALJ failed to articulate adequate specific and legitimate reasons for rejecting the opinions of her treating physicians Drs. Leong and Crews.

**A. Dr. Crews' Treating Opinion**

Plaintiff treated with Amanda Crews, M.D. monthly from May 2007 through March 2008. AR 732-733, 742. On February 4, 2008, Plaintiff underwent a left knee MRI. AR 742. The MRI showed a meniscus tear and related effusion, i.e water on the knee. On October 2, 2008, Dr. Crews completed a medical source statement. AR 774-779. Dr. Crews limited Plaintiff to sitting no more than two hours at one time, standing for five minutes at one time. AR 776. She stated that Plaintiff could stand/walk for less than two hours and sit for six hours total in an eight hour workday. AR 776. She would sometimes need to take unscheduled breaks at least four times a day for fifteen minutes before returning to work and would need to sit during these breaks. AR 777. She needed to elevate her legs above the heart with prolonged sitting. With a sedentary job, her legs would need to be elevated 100 percent of the time. While engaging in occasional standing/walking, she needed to use a cane or other assistive device. She could never lift or carry ten pounds or greater and never twist, stoop, bend, crouch, climb ladders, and stairs. Dr. Crews also diagnosed depression and bipolar disorder. AR 775.

In weighing Dr. Crews' opinion, the ALJ found as follows:

> Dr. Crews' opinion that the claimant could sit for at least 6 hours without a sit/stand option is consistent with the residual functional capacity adopted above and is accorded some weight. I give no weight to Dr. Crews' opinion that the claimant must elevate her legs above her heart 100% of the time when doing sedentary work. Swelling was noted only at the end of the day, not throughout the day. And, I do not accept other exertional and postural limitations assessed by Dr. Crews, as the treatment notes and objective evidence do not support inability to stand more than 5 minutes, walk more than one block, or lift any weight more than rarely.

AR 39.

### B.     Dr. Leong's Treating Opinion

Dr. Leong began treating Plaintiff monthly for chronic low back pain and knee pain in 2009. AR 927-929, 941, 943, 965-973, 1012-1025. On January 27, 2010, Plaintiff underwent a lumbar spine MRI. AR 932- 933. The MRI showed L4-5 and L5-S1 degenerative disc disease with disc desiccation. At L4-5, a combination of moderate sized protrusion and facet arthropathy caused mild central canal spinal stenosis. AR 933. Plaintiff "otherwise [had] an unremarkable lumbar spine MRI examination." AR 931. In March 2010, Dr. Leong noted that morphine and Vicodin helped relived Plaintiff's pain with no side effects. On May 6, 2010, Dr. Leong completed a physical assessment which the ALJ summarized as follows. AR 968-973.

> Dr. Leong completed a Physician Residual Functional Capacity Questionnaire the day before the 2010 hearing. He diagnosed "back pain," and cited an MRI showing degenerative disc disease at L4-5 and L5-S1. He opined the claimant's pain or other symptoms were severe enough to frequently interfere with attention and concentration. He opined that stress worsened her ability to deal with pain, and opined she was incapable of even low stress jobs. Dr. Leong opined that the claimant was able to walk less than one block at a time, sit no more than two hours at a time, and stand one hour at a time. In an eight-hour workday, she was able to stand/walk less than two hours and sit at least six hours out of eight. She did not need to include periods of walking around. She did not need to sit or stand at will. She would need unscheduled breaks four times a day for 15 minutes. She needed a cane while engaging in occasional standing/walking. The claimant was able to rarely lift ten pounds and occasionally lift less than ten pounds. She was unable to twist, stoop, crouch, and climb ladders and stairs. She had no limitations in reaching, handling, or fingering, and had 100 percent ability to perform manipulative activities. Her impairments were likely to produce good days and bad days. She would be absent from work more than four days per month.

> I give little weight to Dr. Leong's opinion because it assesses a residual functional capacity that is not supported by objective findings. Moreover, other evidence

10

undermines the credibility of the claimant's subjective symptoms. Dr. Leong's opinion suggests a capacity for sedentary work, excepting unscheduled breaks and excessive absences. Of note, he reported only "some difficulty walking and standing," not inability to ambulate effectively (i.e., he did not state that she needed an assistive device). Medical findings do not support need for an extra 15 minute break four times a day, or absence from work one day per week (on average).

AR 40.

### C. The ALJ Correctly Weighed the Treating Physician Evidence

The Court is persuaded that the ALJ provided adequate specific and legitimate reasons for discounting the opinions of Plaintiff's treating physicians Drs. Crews and Leong. This Court's decision is grounded on three reasons.

First, the ALJ properly determined that the inconsistencies between certain details contained in the treating physicians' reports undermined the reliability of those opinions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the existence of internal inconsistencies within a treating physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings).

As the ALJ noted, Dr. Crews determined in her 2008 opinion that if Plaintiff had a sedentary job, she would need to elevate her leg 100% of the time. AR 777. In rejecting this elevation restriction, the ALJ stated that the restriction was inconsistent with Dr. Crews own medical observation that Plaintiff experienced swelling only at the end of the day. AR 39; 747, 783-84. The inconsistency between Dr. Crews' medical observations and opined limitations provided a sound reason to reject this opinion. *See* 20 C.F.R. § 416.927(c)(2) (providing for consideration of medical opinions that are inconsistent internally or inconsistent with other evidence); *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (holding that the ALJ may disregard even a treating physician's opinion when it is internally inconsistent); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (concluding that internal inconsistencies and ambiguities within the doctor's opinion provided specific and legitimate reasons for the ALJ to reject the opinion).

The ALJ's decision to reject the elevation restriction was further supported by other evidence in the record that did not support such stringent leg limitations. Dr. Leong specifically noted that Plaintiff did not need to elevate her legs while sitting (AR 971), and the record reflects numerous instances where examinations revealed no joint swelling. See AR 1063, 1068, 1076, 1080, 1090, 1110, 1113. Accordingly, substantial evidence also supported the ALJ's determination that Dr. Crews' leg limitations were entitled to "no weight."

Similarly, with respect to Dr. Leong's opinion, the ALJ found that internal inconsistencies limited the validity of his treating opinion. The ALJ noted that while Dr. Leong diagnosed an "apparent history of fibromyalgia, there was no evidence, findings, or work up for fibromyalgia, hence no basis for finding a medically determined impairment of this kind." AR 40. Dr. Leong's fibromyalgia diagnosis essentially had no objective basis and was therefore wholly inconsistent with his diagnostic testing and treatment of Plaintiff.

The ALJ also noted other inconsistencies between Dr. Leong's RFC findings and his treatment notes. For example, the ALJ noted that Dr. Leong opined that Plaintiff would require "unscheduled breaks and excessive absences" AR 40; 970-73. However, Dr. Leong's progress notes reflect that Plaintiff's MRI "showed a moderate sized protrusion at L4-5 causing mild central canal spinal stenosis" but Plaintiff "otherwise [had] an unremarkable lumber spine MRI examination." AR 40, 931. The ALJ further noted that, "in March 2010, Dr. Leong noted that morphine and Vicodin helped relieve her pain, with no side effects." AR 40, 928. Despite these relatively mild objective findings, Dr. Leong found that Plaintiff would need to take more than four breaks a day and would be absent more than four times a month. The ALJ is entitled to reject a doctor's opinion that is self-contradictory. *Johnson v. Shalala*, 60 F.3d at 1433; *Morgan v. Comm'r*, 169 F.3d at 603 (internal inconsistencies within a doctor's report constitutes a legitimate basis for rejecting report). Internal inconsistencies therefore provided an adequate basis to discount the opinions of Plaintiff's treating physicians.

Second, the ALJ found that Plaintiff's treating physicians based their opinions, in part, on Plaintiff's subjective statements, which were not entirely credible. A treating physician's opinion based on subjective complaints of a claimant whose credibility has been discounted can be properly

disregarded. *Tonapetyan*, 242 F.3d at 1149. In discounting Dr. Crews' opinion, the ALJ pointed to Dr. Crews' findings that Plaintiff gave an exaggerated response during a spinal examination. AR 39. Plaintiff's exaggerated responses were a legitimate reason to treat Dr. Crews' opinion cautiously.

Relatedly, when evaluating Dr. Leong's opinion, the ALJ determined that other evidence undermined the credibility of Plaintiff's subjective statements. Indeed, the ALJ noted that at several times throughout the record, Plaintiff was untruthful about her history of drug use; an objective test of memory malingering (TOMM) indicated that Plaintiff was trying to misrepresent her cognitive ability; and at least two doctors reported malingering behavior. AR 40-41, 45. The ALJ thus properly concluded that the opinions of treating physicians Crews and Leong were further undermined by Plaintiff's lack of credibility.

Third, the ALJ found that there was little medical evidence to support the opinions of Drs. Crews and Leong. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d at 751. Here, the ALJ thoroughly described the treating physicians' opinions of Plaintiff's impairments and resulting limitations. The ALJ concluded however that the numerous diagnostic studies performed do not support the severity of symptoms as alleged by Plaintiff's treating physicians. Plaintiff's treating physicians found that she could rarely lift less than ten pounds, that she could not walk a full city block, and that she must elevate her leg 100% percent of the time. Contrary to these extreme limitations, the ALJ noted that the evidence does not indicate any abnormality involving Plaintiff's lower left extremity. AR 44. Records from Dr. Crews show knee surgery in April 2008, and while Plaintiff continued to complain of knee pain post-surgery, there is no medical evidence of additional knee surgeries, injections, physical therapy, or any other treatment beyond pain medication. AR 45.

With respect to Plaintiff's back pain, the ALJ found that while Plaintiff was sent for further testing at Stanford, she did not attend. Additionally, in 2013 she told her emergency room doctor that "she had neck and back pain every now and again, and reported it lasted for 30 minutes." AR 41. Without substantial evidence to support the opinions of the treating physicians, the ALJ was entitled to disregard these opinions as unsupported by clinical findings. *Matney*, 981 F.2d at 1019.

Based on the specific and legitimate reasons opined by the ALJ, the Court will not reverse or remand the ALJ's decision for failure to adopt the opinions of Plaintiff's treating physicians.

### 3. Plaintiff's Examining Psychiatrist – Les Kalman M.D.

Finally, Plaintiff argues that the ALJ erred by rejecting the opinion of her examining psychiatrist, Dr. Kalman. In particular, Plaintiff challenges the ALJ's decision to discredit Dr. Kalman's 2008 and 2010 examining opinions because Dr. Kalman failed to acknowledge Plaintiff's inconsistent statements about her "ongoing use of cannabinoids." AR 43. According to Plaintiff, the ALJ's finding here is neither specific nor legitimate because the ALJ found that her "drug abuse has been in remission since 2008." (Doc. 17 at 22). Plaintiff further argues that the ALJ failed to explain why the use of marijuana makes Dr. Kalman's opinions any less valid, particularly because Dr. Kalman's 2010 opinion was during a period of remission as found by the ALJ. (Doc. 17 at 22).

The ALJ's rationale in rejecting Dr. Kalman's opinion based on Plaintiff's inconsistent statements about her drug use was a specific and legitimate reason to discount Dr. Kalman's opinion. Here, the ALJ gave little weight to Dr. Kalman's opinion in part because of the failure to mention Plaintiff's drug use despite evidence in the record showing that her marijuana use was pervasive and ongoing. AR 43. Indeed, Dr. Kalman does not mention Plaintiff's history of marijuana use in either his 2008 examining report or his 2010 questionnaire. AR 765, 950-952. Nothing in the record indicates that Dr. Kalman had any awareness of Plaintiff's inconsistent substance-abuse history.

When Dr. Kalman asked Plaintiff about her drug use in 2008 and 2010 she apparently falsely reported five years of abstinence from drugs. AR 765, 951. But, as the ALJ noted, Plaintiff tested positive for THC (cannabinoids) on no less than four occasions while she was attending a "dual diagnosis group" at Stanislaus County Behavioral Health ("SCBH") between October 2007 and February 26, 2008. AR 42, 603. The ALJ noted that Plaintiff was not honest in her history when it came to her substance use. AR 44.

Dr. Kalman's apparent ignorance of Plaintiff's drug abuse was relevant to the ALJ's assessment of the weight to give his opinion. *Edlund v. Massanari*, 253 F.3d 1152, 1157 & n.6 (9th Cir. 2001) (as amended) ("[n]ature and extent of the treatment relationship" and "the more knowledge a treating source has about your impairment(s)" are relevant factors in assessing treating-

14

source opinion; *see also* § 416.927(c)(6) (extent to which doctor is familiar with record is relevant factor in deciding weight to give opinion). Dr. Kalman was not fully aware of Plaintiff's ongoing drug use. He relied on Plaintiff's statements to determine Plaintiff's diagnosis and functioning, yet Plaintiff's statements were unreliable. Because the ALJ found Plaintiff to be "not entirely credible" (AR 45), in part due to "inconsistent statements regarding drug abuse" that she provided to Dr. Kalman (AR 44)—findings Plaintiff has not challenged—the ALJ properly gave little weight to Dr. Kalman's opinions.

Moreover, the ALJ found that Dr. Kalman's mental impairment opinions were inconsistent with those from SCBH and other treating and examining sources. AR 42, 44. While Plaintiff argues that the ALJ erred in finding a conflict between Dr. Kalman's examining report and the progress notes written largely by "non-acceptable medical sources" *i.e.* licensed therapists and behavioral health specialists at SCBH, this was not error for two reasons. First, the ALJ noted that Dr. Kalman's opinion conflicted with other examining opinions, which included that of Dr. Bolschwing, Ph.D. Dr. Bolschwing performed a psychological consultative examination of Plaintiff on October 31, 2007. AR 471-475. The ALJ noted that Dr. Bolschwing found that Plaintiff appears to be malingering her psychiatric symptoms. AR 474. Despite that, Dr. Bolschwing opined that Plaintiff was able to understand, remember and carry out simple instructions without difficulty. Plaintiff was also able to maintain attention and concertation and endure stress. AR 41, 474. This opinion was arguably in conflict with Dr. Kalman's findings that Plaintiff's impairments would cause her to miss work more than 3 or 4 times a month.

Second, in addition to Dr. Bolschwing's report, the ALJ appropriately gave credence to the progress notes from SCBH. According to SSR 06–03p, an ALJ may use evidence from "other sources," including licensed therapists, to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. *See* SSR 06–03p (the opinions of medical sources who are not "acceptable medical sources," including nurse practitioners, physician assistants, and licensed clinical social workers, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file," in light of "the growth of managed health care in recent years and the emphasis on containing medical costs").

Here in finding that Dr. Kalman's opinions were inconsistent with the record, the ALJ noted that Dr. Kalman was not a treating source. The ALJ contrasted Dr. Kalman's examinations, occurring on two occasions, with the treatment summary from SCBH over a period of 16 months. In comparison, notes from Plaintiff's treatment at SCBH demonstrated that Plaintiff is "persistent and intelligent (tested out at genius level in second grade," but her attendance was sporadic, she made little progress, and she "tested positive for THC (cannabinoids) every time she was tested." AR 42, 608. "Plaintiff was [subsequently] discharged for non-participation." AR 42. Ultimately, this evidence, in addition to other treating and examining evidence, undercut Dr. Kalman's findings. AR 44. The ALJ's analysis with respect to Dr. Kalman's opinion was therefore sufficient.

Having thoroughly reviewed the ALJ's evaluation of the medical evidence, the Court finds that the ALJ's decision was based on substantial evidence and he supported his findings with specific and legitimate reasoning. Accordingly, the Court will not reverse or remand the ALJ's decision for failure to appropriately weigh the medical evidence.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy Berryhill, Acting Commissioner of Social Security and against Plaintiff, Tanya St. John.

IT IS SO ORDERED.

Dated: __August 18, 2017__         /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE